# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ALONZO TOBIAS OLIVER,

                  Petitioner,

   v.

P.L. VASQUEZ,

                  Respondent.

                              /

1:11-cv-01192-LJO-DLB (HC)

FINDINGS AND RECOMMENDATION
REGARDING PETITION FOR WRIT OF
HABEAS CORPUS

[Doc. 1]

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND AND STATEMENT OF FACTS[1]

On February 25, 2008, Fresno Police Officer Vanita Schell-Route was on duty patrolling the southwest portion of the city. At around 2:00 p.m. she was in her patrol car turning from G street onto California Street when she saw [Petitioner] standing on the corner of the intersection, holding his penis and urinating in public. [Petitioner] had his back to G street, but as Schell-Route turned onto California Street she could see him holding his penis with both hands and a stream of urine flowing.

By the time Schell-Route parked her vehicle, [Petitioner] had finished urinating and was walking toward her. She stopped [Petitioner] and explained that he was being detained because she had seen him urinating on a public street. [Petitioner] acknowledged he had been urinating in public, but seemed irritated and annoyed at being detained.

---

[1] The statement of facts is taken from the California Court of Appeal and presumed to be correct. 28 U.S.C. 2254 § (d)(2), (e)(1).

1

Schell-Route asked to see [Petitioner's] identification.  When he did not produce a valid identification, she placed him under arrest.  Schell-Route handcuffed [Petitioner] for officer safety purposes because she was by herself.  After arresting [Petitioner], Schell-Route conducted a search incident to arrest.  She found an off-white substance in [Petitioner's] jacket pocket, which she believed to be rock cocaine.  Schell-Route informed [Petitioner] that additionally he was being arrested for possession of rock cocaine.  It was subsequently confirmed that the off-white substance was cocaine base in a usable quantity.

On March 6, 2008, [Petitioner] filed a motion to suppress, claiming there was no valid basis for his detention and the rock cocaine was seized as a result of an unreasonable warrantless search.  The People opposed the suppression motion, contending that the officer had probable cause to arrest [Petitioner] based upon his violation of Fresno Municipal Code (hereafter FMC) section 9-2512 for urinating in public.  At the March 26 hearing on the suppression motion, the trial court denied the motion.

On April 8, 2008, [Petitioner] was charged in count 1 with possession of cocaine base and in count 2 with giving false information to a police officer, a violation of Penal Code section 148.9, subdivision (a). [FN 3] It also was alleged that he had two strike priors for robbery and had served four prior prison terms.  The count 2 charge was dismissed on the People's motion and [Petitioner] pled not guilty to the count 1 offense.

FN3.  All further statutory references are to the Penal Code unless otherwise specified.

On May 14 and 19, 2008, the trial court denied [Petitioner's] Marsden motions.

On May 27, 2008, defense counsel requested a competency determination.  The trial court suspended criminal proceedings and appointed two psychologists to conduct evaluations of [Petitioner].  One found [Petitioner] competent; the other did not.  The trial court appointed a third psychologist, who found Oliver competent to stand trial.  On September 2, 2008, based upon the evaluations, the trial court found [Petitioner] competent to stand trial.

On October 8, 2008, jury selection for the trial commenced.  On October 9, the trial court denied another of [Petitioner's] *Marsden* motions and also denied his *Faretta* motion.

At trial, the People presented testimony regarding two prior incidents to establish [Petitioner's] knowledge of cocaine base.  In one incident he had a crack pipe in his possession.  In the second incident, [Petitioner] had a crack pipe in his possession that had burn markings, residue, and condensation, indicating it recently had been used.

[Petitioner] testified in his own defense and denied urinating in public.  He claimed he had been walking in the area when Schell-Route stopped him for no reason.  He was homeless and cold and had been wearing a jacket that someone had given him.  That jacked had rock cocaine in the pocket, which he told the officer was not his.

The jury convicted [Petitioner] of the count 1 offense. [Petitioner] previously had waived his right to a jury or court trial on the priors and now

2

1    sought to withdraw his waiver; the trial court denied the request.

2              On November 13, 2008, the trial court declined to strike the prior
3    convictions and sentenced [Petitioner] to a term of 29 years to life in prison.

4    (Ex. A, to Answer.)

5         Petitioner filed a timely notice of appeal.  On May 13, 2010, the California Court of

6    Appeal, Fifth Appellate District affirmed the judgment.  (Ex. A, to Answer.)

7         On May 23, 2010, Petitioner filed a petition for rehearing.  The Court denied the petition

8    on June 3, 2010, along with a modification of its prior opinion.  (Ex. B, to Answer.)

9         Petitioner filed a petition for review in the California Supreme Court, which was denied

10   on July 21, 2010.

11        Petitioner did not file any state post-conviction collateral petitions.

12        Petitioner filed the instant federal petition for writ of habeas corpus on July 11, 2011.

13   Respondent filed a timely answer to the petition on November 10, 2011, and Petitioner filed a

14   traverse on December 6, 2011.

15                                        DISCUSSION

16   I.    Jurisdiction

17        Relief by way of a petition for writ of habeas corpus extends to a person in custody

18   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

19   or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v.

20   Taylor, 529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as

21   guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Fresno County

22   Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28

23   U.S.C. § 2241(d).

24        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

25   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

26   enactment.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

27   (9th Cir. 1997), cert. denied, 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th

28   Cir. 1996).  The instant petition was filed after the enactment of the AEDPA and is therefore

1  governed by its provisions.

2  II.    Standard of Review

3          Where a petitioner files his federal habeas petition after the effective date of the Anti-

4  Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

5  the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

10  28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d)

11  unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly

12  established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131

13  S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412

14  (2000).  Habeas relief is also available if the state court's decision "involved an unreasonable

15  application" of clearly established federal law, or "was based on an unreasonable determination

16  of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C.

17  § 2254(d)(1), (d)(2)).  "[C]learly established ... as determined by" the Supreme Court "refers to

18  the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant

19  state-court decision." Williams v. Taylor, 529 U.S. at 412.  Therefore, a "specific" legal rule

20  may not be inferred from Supreme Court precedent, merely because such rule might be logical

21  given that precedent.  Rather, the Supreme Court case itself must have "squarely" established

22  that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct.

23  1411, 1419 (2009).  Moreover, the Supreme Court itself must have applied the specific legal rule

24  to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct.

25  733, 737 (2011).  Under § 2254(d)(1), review is limited to the record that was before the state

26  court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398

27  (2011).  "A state court's determination that a claim lacks merits precludes federal habeas relief

28  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

1  Richter, 131 S.Ct. at 786.

2      "Factual determinations by state courts are presumed correct absent clear and convincing

3  evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

4  and based on a factual determination will not be overturned on factual grounds unless objectively

5  unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

6  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254

7  apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v.

8  Blodgett, 393 F.3d 943, 976-77 (2004).

9      Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501

10  U.S. 979, 803 (1991).  However, "[w]here a state court's decision is unaccompanied by an

11  explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

12  basis for the state court to deny relief."  Richter, 131 S.Ct. at 784.

13  III.    Challenge to Warrantless Detention, Seizure and Search

14      In Ground One, Petitioner contends the warrantless detention, seizure and search was not

15  supported by probable cause because there was no evidence of a "necessary element" of the

16  alleged crime for which he was arrested.

17      Respondent initially argues that this claim is not exhausted because it was not presented to

18  the California Supreme Court.

19      In order to exhaust a habeas claim, the petitioner must provide the highest state court with

20  an opportunity to rule on the merits of the claim.  Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir.

21  1982).  The claim must be "fairly presented," and the petitioner must present "the state courts

22  with the same claim he urges upon the federal courts.  Picard v. Connor, 404 U.S. 270, 276

23  (1971); see also Duncan v. Henry, 513 U.S. 364 (1995) (per curiam).

24      Petitioner did not present this claim in his petition for review submitted to the California

25  Supreme Court.  Petitioner only presented this issue on direct appeal to the California Court of

26  Appeal.  However, the claim was not repeated in his petition for review in the California Supreme

27  Court, nor did he file a state habeas petition in the California Supreme Court asserting the issue.

28  Accordingly, Petitioner has failed to satisfy the exhaustion requirement and the claim is subject to

5

1  dismissal.  Nonetheless, for the reasons explained below, the claim is clearly without merit and

2  must be denied.  28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 623-624 (9th Cir. 2005).

3      A federal district court cannot grant habeas corpus relief on the ground that evidence was

4  obtained by an unconstitutional search and seizure if the state court has provided the petitioner

5  with a "full and fair opportunity to litigate" the Fourth Amendment issue.  Stone v. Powell, 428

6  U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993),

7  cert denied, 511 U.S. 1057 (1994).  The only inquiry this Court can make is whether petitioner

8  had a fair opportunity to litigate his claim, not whether petitioner did litigate nor even whether the

9  court correctly decided the claim.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996);

10  see also Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal

11  Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary).

12      The policy behind the Stone Court's analysis is that the exclusionary rule is applied to stop

13  future unconstitutional conduct of law enforcement.  Stone, 428 U.S. at 492.  However, excluding

14  evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost.

15  See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28.  Thus, the Ninth Circuit has

16  described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's
> Fourth Amendment claim has been adequately litigated in state court, enforcing
> the exclusionary rule through writs of habeas corpus would not further the
> deterrent and educative purposes of the rule to an extent sufficient to counter the
> negative effect such a policy would have on the interests of judicial efficiency,
> comity and federalism.

20  Woolery, 8 F.3d at 1326; see also Stone , 428 U.S. at 493-494.

21      California provides defendants such an opportunity in the trial court through California Penal

22  Code section 1538.5.  Petitioner in fact filed a suppression motion and the trial court held a

23  hearing and considered the evidence but denied the motion.  Because the state court provided

24  Petitioner with a "full and fair opportunity to litigate" his Fourth Amendment issue, the claim

25  must be denied.  Stone, 428 U.S. at 494.

26  IV.  Ineffective Assistance of Counsel Claims

27      In Ground Two, Petitioner raises the following five claims of ineffective assistance of

28

counsel: (1) counsel failed to develop and argue at the suppression hearing that the deserted nature of the area of G and California Street rendered Petitioner not guilty of violating the municipal code section for which he was arrested; (2) counsel failed to show Petitioner's actions did not indicate that he committed any felony warranting an investigation; (3) counsel failed to follow Petitioner's request to test the drug "without 'traces or debris'"; (4) counsel failed to investigate and perform at the 1368 hearing; and (5) counsel failed to present any mitigating argument or evidence at the sentencing hearing.

As with Ground One, Respondent argues that his ineffective assistance claims are not exhausted because the claims were not presented to the California Supreme Court. Notwithstanding the lack of exhaustion, for the reasons explained below the claims are plainly without merit.  28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d at 623-624.

A.      Motion to Suppress

In addressing Petitioner's related suppression motion claim in conjunction with the ineffective assistance of counsel claim, the state appellate court held as follows:

> [Petitioner] contends the trial court erred in denying his motion to suppress the evidence.  Specifically, [Petitioner] argues the warrantless detention, search, and seizure were unsupported by probable cause because all necessary elements of the offense were not established.  The People claim this issue is forfeited because [Petitioner] failed to raise this specific point in his moving papers filed with the trial court.
>
> We decline to treat the issue as forfeited.  When a defendant has been subjected to a warrantless search or seizure, he or she is not required to anticipate the People's justification for proceeding without a warrant.  "Therefore, defendants who do not know, and hesitate to guess, what justification the prosecution might offer can simply await the prosecution's argument and evidence, and then respond with specific objections. [Citation.]" (*People v. Williams* (1999) 20 Cal.4th 119, 136, 83 Cal.Rptr.2d 275, 973 P.2d 52.)  Under *Williams*, [Petitioner] was not required to assert with specificity in his moving papers the grounds for objecting to a warrantless search and seizure.
>
> ***Standard of review***
>
> When reviewing the denial of a motion to suppress, we employ a two-prong standard of review.  We begin by viewing the record in a light favorable to the ruling and "defer to the trial court's factual findings, express or implied, where supported by substantial evidence."  (*People v. Glaser* (1995) 11 Cal.4th 354, 362, 45 Cal.Rptr.2d 425, 902 P.2d 729 (*Glaser*).)  We then exercise our independent judgment to determine "whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment."  (*Ibid*.)

*Analysis*

The warrantless detention, search, and seizure were valid.  Section 1538.2 governs motions to suppress evidence obtained as a result of a search or seizure.  Section 1538.5, by its terms, authorizes a motion to suppress if "The search or seizure without a warrant was unreasonable."  (*People v. Cutley* (1970) 12 Cal.App.3d 732, 746, 90 Cal.Rptr. 783, quoting § 1538.5, subd. (a).)  "The clear implication of the subsection is that the evidence need not be suppressed, if the seizure was reasonable.  To state the implication positively: a warrantless seizure of evidence may be valid if reasonable cause for the seizure exists."  (*Ibid*.)

Here, Schell-Route stopped [Petitioner] after she observed him urinating on a public street.  The officer testified she arrested him for this offense, which is a misdemeanor set forth in FMC section 9-2512.  Following [Petitioner's] arrest, Schell-Route conducted a search incident to arrest, during which she discovered the baggie with crack cocaine.

The Fourth Amendment allows a police officer to make a custodial arrest, even for minor offenses.  (*Atwater v. Lago Vista* (2001) 532 U.S. 318, 323, 121 S.Ct. 1536, 149 L.Ed.2d 549 [arrest for violation of seatbelt law upheld].)  *Atwater* upheld a custodial arrest for a violation of Texas's seatbelt law, an offense punishable by a fine of not less than $25 or more than 450.  (*Ibid*.)  Under *Atwater*, all that is needed to justify a custodial arrest is a showing of probable cause.  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  (*Id*. at p. 354.)

There "is nothing inherently unconstitutional about effecting a custodial arrest for a fine-only offense. [Citation.]" (*People v. McKay* (2002) 27 Cal.4th 601, 607, 117 Cal.Rptr.2d 236, 41 P.3d 59 (*McKay*).)  In *McKay*, the defendant was arrested because he failed to produce a driver's license or other identification when requested by an officer.  (*Id*. at p.606, 117 Cal.Rptr.2d 236, 41 P.3d 59.)

[Petitioner] contends, however, that Schell-Route did not have probable cause to arrest him.  FMC section 9-2512 provides:

"No person shall commit a nuisance in any public place, or upon any private property, or in any place where there are other persons to be offended or annoyed thereby.  The phrase 'commit a nuisance' as used in this section shall mean evacuate the bowels or bladder at a place not provided for that purpose."

[Petitioner] argues there was no one present to be annoyed or offended by his urinating in public because the street corner was deserted; consequently, there was no probable cause to arrest him for violating this code section.

The plain language of FMC section 9-2512 provides that "no person shall commit a nuisance in any public place."  The street corner at G and California clearly is a public place.  FMC section 9-2512 defines "commit a nuisance" as including evacuating one's bladder, which [Petitioner] was doing when Schell-Route spotted him.

It is entirely irrelevant whether Schell-Route, or anyone else, was annoyed or offended by [Petitioner's] urinating in public.  FMC section 9-2512 is stated in the alternative: no person shall commit a nuisance in any public place, or upon any private properly, or in any place where there are persons to be offended.  The language of FMC section 9-2512 is clear and unambiguous.

In analyzing a statute, we give meaning to every word and phrase in order to accomplish a result consistent with legislative intent. (*McKay*, *supra*, 27 Cal.4th at p. 621, 117 Cal.Rptr.2d 236, 41 P.2d 59.) "'When the language of a statute is "clear and unambiguous" and thus not reasonably susceptible of more than one meaning, ""there is no need for construction."'" [Citations.]' [Citation.]" (*People v. Leal* (2004) 33 Cal.4th 999, 1007, 16 Cal.Rptr.3d 869, 94 P.3d 1071.)

Having determined that Schell-Route properly placed [Petitioner] under arrest for violating FMC section 9-2512, it follows that she was justified in conducting a search incident to arrest. (*U.S. v. McFadden* (2d Cir. 2001) 238 F.3d 198, 204 [upholding search incident to arrest for riding a bicycle on the sidewalk].)

We therefore conclude the trial court did not err in denying the motion to suppress. (See *Glaser*, *supra*, 11 Cal.4th at p. 362, 45 Cal.Rptr.2d 425, 902 P.2d 729.)

### *Ineffective assistance of counsel claim*

Because we decline to treat as forfeited the challenges to admission of the evidence obtained as a result of the search incident to arrest, it follows that we need not address [Petitioner's] claim of ineffective assistance of counsel for failing to raise these challenges in the trial court. We also note that our analysis of the relevant FMC section makes clear that [Petitioner's] contentions are without merit, thus any attempt to assert these contentions in the trial court would have been fruitless. (*People v. Thomas* (1992) 2 Cal.4th 489, 531, 7 Cal.Rptr.2d 199, 828 P.2d 101.)

(Ex. A, to Answer at 4-7.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; Harrington v. Richter, 131 S.Ct. at 788 ("The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of

9

reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.  It is not enough "'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Richter, 131 S.Ct. at 787 (internal citation omitted).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

In order to determine whether Petitioner's counsel's decision was reasonable, the Court must examine the strength of a motion to suppress on the bases alleged by Petitioner.  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).  Specifically, in order to demonstrate prejudice, Petitioner must demonstrate that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to Petitioner.  Id.

Here, the California Court of Appeal reasonably found that counsel was not unreasonable in failing to argue the deserted nature of the area with more specificity and such finding was consistent with Strickland.  More specifically, Petitioner cannot show prejudice because the appellate court determined that the clear language of Fresno Municipal Code section 9-2512 does not support an argument to suppress the evidence because of the deserted nature of the area and any such argument would have been fruitless.  As noted, "FMC section 9-2512 is stated in the alternative: no person shall commit a nuisance in any public place, or upon any private property,

or in any place where there are persons to be offended." (Ex. A at 6.) Therefore, counsel could not have been deficient nor was Petitioner prejudiced, and the appellate court's denial is reasonable.

### B.    Remaining Ineffective Assistance of Counsel Claims

Respondent correctly argues that Petitioner did not raise the other four ineffective assistance of counsel claims in any state court. Therefore, theses claims are unexhausted and are without merit under de novo review. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

First, Petitioner's claim that counsel should have known Petitioner did not commit any felony warranting an investigation, is without merit. The California Court of Appeal reasonably determined that "[t]he warrantless detention, search, and seizure were valid" because Officer Schell-Route observed Petitioner urinating on a public street, which constitutes a misdemeanor violation under Fresno Municipal Code section 9-2512. (Ex. A at 5.) Therefore, Petitioner's claim that he did not commit any felony is irrelevant.

Second, Petitioner's claim counsel should have tested the drug that was seized "without 'traces or debris,'" is without merit. Officer Schell-Route found the off-white substance in Petitioner's jacket, and based on her training and experience, she believed it to be $5.00 worth of rock cocaine-a useable amount. A community service officer later determined the substance to be presumptively positive for cocaine and weighed .1 grams, a useable amount. A criminalist with the California Department of Justice confirmed the substance contained cocaine base. (RT 1691.) In light of this strong evidence, counsel reasonably determined that the substance was not merely an unusable scraping but was rather a useable amount of cocaine base.

Third, Petitioner's claim that stand-in counsel Ms. Maxwell failed "to investigate" and perform at the section 1368 hearing, is also without merit. Ms. Maxwell appeared at the September 2, 2008 hearing. At the time, the issue of Petitioner's competence was being explored by the trial court. Two doctors had been appointed to examine Petitioner, but they came to different conclusions and the court appointed a third doctor, Dr. Laura Geiger, who found Petitioner competent. It appears that Petitioner's appointed attorneys, Mr. De Ocampo and Mr. Kim, did not wish to contest the finding and asked, Ms. Maxwell, to schedule the case for further

proceedings on their behalf.  There is no basis to Petitioner's claim that Ms. Maxwell was under a duty to contest Dr. Geiger's determination because his appointed attorneys found it was not unreasonable and any argument to the contrary would not succeed.  "A disagreement with counsel's tactical decisions does not provide the basis for declaring that the representation was constitutionally deficient."  Raley v. Ylst, 470 F.3d 792, 799 (9th Cir. 2006); United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981) (per curiam).

Finally, Petitioner's claim that counsel De Ocampo failed to present any mitigating evidence at the sentencing hearing is contrary to the record.  Counsel filed a request for the trial court to strike Petitioner's prior felony convictions.  Mr. De Ocampo specifically argued the court should strike one or more of his priors convictions because (1) if not Petitioner would suffer a disproportionate "[p]unishment under the Three Strikes law"; (2) the triggering offense was "relatively minor" and did not involve "serious" or "violent" conduct; (3) the prior strikes were remote in time; (4) his criminal activity had decreased in severity; and (5) his recent problems with law enforcement were the result of substance abuse.  (LD 1 at 229-230.)  At the hearing, counsel reinterated that Petitioner's offenses and parole violations were the result of a drug problem and he was "deserving of rehabilitation."  (LD 4 at 2229-2230.)  However, the trial court found that Petitioner was within the Three Strikes law and denied counsel's request.  In assessing Petitioner's criminal history, the trial court noted that Petitioner had "served little time free of either actual custody or parole since 1990" because of his repeated criminal conduct and violations.  (Id. at 2224.)  The trial court observed that counsel's presentation of the history and state of the law was "thorough" and Petitioner's claim to the contrary is without merit.  (LD 4 at 2221, LD 1 at 227.)

V.   Independent Judicial Evaluation of Competency to Stand Trial

Petitioner contends that he was denied an independent judicial evaluation of his competence when the trial court allegedly decided "the issue based on which position predominated" and ignored his attorneys observations, Dr. Hendricksen's medical report, and Petitioner's inability to cooperate with counsel.

The California Court of Appeal denied the claim on direct appeal in the last reasoned decision stating:

> [Petitioner] claims he was denied an independent judicial evaluation of his competence to stand trial when the trial court ignored the observations of his attorneys. He further argues that the trial court "merely counted up the doctors' reports on both sides of the issue, and determined that the position with two votes was more meritorious than the position with only one." [Petitioner] opines that the trial court ignored the evidence of his incompetency, including (1) his decision to skip portions of his trial, (2) refusal to dress in civilian clothes for the trial, (3) admitting the allegations regarding the priors, and (4) his difficultly communicating, trusting, or cooperating with his lawyers.

> ### Factual summary

> On May 27, 2007, the trial court suspended criminal proceedings and appointed two clinical psychologists, Norman E. Hendricksen and Harold L. Seymour, to examine [Petitioner]. Seymour filed his report on June 17, 2008, concluding that:

> "[Petitioner's] [Competency Assessment Inventory] performance places him in the competent range. He understands his rights, the criminal trial process, and the roles of various courtroom personnel. His main issue appears to be his concern that his counsel is not aggressively pursuing his assertion that Fresno Police Department officers violated the law in arresting him."

> Hendricksen also filed his report on June 17, 2008, but he reached the opposite conclusion. Hendricksen opined:

> "[Petitioner] was oriented in all spheres. There were no surface indications of organic brain impairment. Perceptual-motor functions were grossly intact. Attention and concentration were satisfactory. Recent and remote memory appeared intact. Intelligence was estimated to be within the average range. Insight and judgment appeared fair at best."

> Despite these observations, Hendricksen concluded [Petitioner] was not competent because he was guarded and suspicious, only moderately cooperative, and [Petitioner] believed he would not receive a fair trial because he was falsely arrested and charged. Hendricksen stated, "[Petitioner's] overall presentation suggests he is incapable of rationally assisting in his defense or of representing himself in court."

> On June 24, 2008, the trial court appointed a third clinical psychologist, Laura A. Geiger, to evaluate [Petitioner]. Geiger concluded [Petitioner] was competent. He exhibited an understanding of the charges, potential penalties, courtroom procedures, and functions of courtroom participants. He exhibited "good abstract reasoning processes." [Petitioner] was able to cooperate rationally with counsel and assist in his defense. Geiger opined that "any lack of cooperation with counsel most likely was volitional."

> At the hearing on September 2, 2008, the trial court received Gieger's evaluation. The trial court then stated, "We had had split authority. This was the third opinion sought in light of the first two. [¶] With that, I believe we will proceed, given the evidence that is before the Court from the witnesses."

*Analysis*

A person cannot be tried or adjudged to punishment while mentally incompetent. (§ 1367, subd. (a).)  A defendant is mentally incompetent if, as a result of a mental disorder or developmental disability, he or she is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.  (*Ibid*.)  When there is a doubt as to the defendant's competence, section 1368, subdivision (b) requires that the defendant receive a hearing on the issue of competency. The hearing may consist of a determination of competency by the trial court after receipt of the psychological evaluations. (*People v. Weaver* (2001) 26 Cal.4th 876, 904, 111 Cal.Rptr.2d 2, 29 P.3d 103.)  A trial court's finding of competence is not disturbed on appeal if there is any substantial, credible evidence to support the finding.  (*People v. Castro* (2000) 78 Cal.App.4th 1402, 1418, 93 Cal.Rptr.2d 770 (*Castro*).)

Here, all three evaluations of [Petitioner] were received and reviewed by the trial court.  Seymour and Geiger concluded [Petitioner] was competent to stand trial; Hendricksen concluded [Petitioner] was not competent.  The rationale for Hendricksen's conclusion that [Petitioner] was not competent was that [Petitioner] claimed to be arrested falsely and was guarded and suspicious.  Geiger, however, noted that [Petitioner] was capable of cooperating and working with defense counsel. [Petitioner's] refusal to do so likely was volitional.

The test in a section 1368 determination is whether the defendant is competent to cooperate and work with counsel; not whether he chooses to cooperate.  (*People v. Hightower* (1996) 41 Cal.App.4th 1108, 1112, 49 Cal.Rptr.2d 40.)  Based upon the evidence before it, the trial court reasonably could have found by a preponderance of the evidence that [Petitioner] was competent to stand trial.  (*Castro*, *supra*, 78 Cal.App.4th at p. 1418, 93 Cal.Rptr.2d 770.)

As for [Petitioner's] decision to skip portions of his trial, admit his priors, and refuse to dress in civilian clothes during trial, these matters are irrelevant to our analysis of the trial court's ruling on competency.  The trial proceedings were suspended on the first day of voir dire, May 27, 2008. [Petitioner] was found competent on September 2, 2008. The trial commenced on October 9, 2008. [Petitioner] admitted the priors on October 10, 2008.

Any refusal of [Petitioner] to wear civilian clothing or attend hearings in his case prior to the commencement of trial were known by the trial court before it suspended proceedings and ordered the psychological evaluations.  These concerns had been brought to the trial court's attention by defense counsel.

Whether [Petitioner] continued during the trial to insist on wearing jail clothing or whether he refused to attend a portion of the trial, as well as his decision to admit the priors, are not germane to our analysis on appeal.  Our review is limited to the evidence before the trial court at the time of the competency hearing. (*People v. Welch* (1999) 20 Cal.4th 701, 739, 85 Cal.Rptr.2d 203, 976 P.2d 754 (*Welch*) [trial court's decision not to declare doubt as to defendant's competency cannot be challenged on appeal by reference to subsequently produced evidence].)  Any matters occurring after the competency hearing cannot be used as a basis to challenge the trial court's competency determination. (*Ibid*.)

On appeal, this court determines whether substantial evidence, viewed in the light most favorable to the verdict, supports the trial court's finding. (*People v. Marshall* (1997) 15 Cal.4th 1, 31, 61 Cal.Rptr.2d 84, 931 P.2d 262 (*Marshall*).)  We conclude substantial evidence supported the trial court's competency determination.

1

2   (Ex. A, to Answer at 7-10.)

3       It is clearly established federal law that an incompetent defendant may not be held to

4   stand trial.  Drope v. Missouri, 420 U.S. 162, 171 (1975); Pate v. Robinson, 383 U.S. 375, 385

5   (1966).  A defendant is incompetent if "he lacks the capacity to understand the nature and object

6   of the proceedings against him, to consult with counsel, and to assist in preparing his defense."

7   Drope, 420 U.S. at 171.  If the evidence raises a bona fide doubt about the defendant's

8   competence, due process requires a full competency hearing to be held, to be ordered sua sponte

9   by the judge.  Pate v. Robinson, 383 U.S. at 385.  The applicable test for competency is "whether

10  the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of

11  rational understanding and has a rational as well as factual understanding of the proceedings

12  against him."  Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v. United States, 362

13  U.S. 402, 402 (1960).

14      The burden of establishing mental incompetence rests with the petitioner.  Boag v. Raines,

15  769 F.2d 1341, 1343 (9th Cir. 1985); McKinney v. United States, 487 F.2d 948, 949 (9th Cir.

16  1973).  A "state court's determination that a defendant is competent to stand trial is a factual

17  determination which must be given deference when reviewed in federal court on a petition for

18  habeas corpus."  Maggio v. Fulford, 462 U.S. 111 (1983) (per curiam); 28 U.S.C. § 2254(d)(2) &

19  (e)(1).

20      The appellate court properly set forth the applicable Supreme Court authority as applied to

21  the facts in this case.  The court pointed out Dr. Geiger's determination that Petitioner was

22  capable of cooperating and working with defense counsel.  Dr. Seymour found Petitioner's

23  presentation was "selective" because he had interacted "quite well" with female jail staff.  (CT

24  241.)  Dr. Geiger opined that Petitioner was able to cooperate rationally with counsel and his lack

25  of cooperation was most likely "volitional."  (Id. 248-249.)  She specifically stated, "Mr. Oliver is

26  able to assist counsel rationally, and was quite rational with this examiner."  (Id. 249.)  Thus,

27  Petitioner was able to assist counsel if he chose to do so.  (Id. at 250.)

28

The trial court reviewed all three evaluations and came to the conclusion that Petitioner was competent to stand trial. No further finding need be made by the trial court. See People v. Maxwell, 115 Cal.App.3d 807, 812 (1981) (no "specific form or finding" required at the competency hearing and the court need not utter any "magic words" in rendering its determination).

Moreover, the trial court was well aware that Petitioner had refused to wear civilian clothing or attend hearings in this case prior to the commencement of trial as trial counsel expressed these matters to the trial court. The fact that Petitioner "continued during the trial to insist on wearing jail clothing or whether he refused to attend a portion of the trial, as well as his decision to admit the priors does not render the appellate court's analysis unreasonable because its review is "limited to the evidence before the trial court at the time of the competency hearing." Based on the foregoing, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## VI. Marsden Violation

Petitioner contends the trial court erred by failing to hold a Marsden hearing on May 27, 2009, because there was a breakdown in communication between himself and his counsel.

In the last reasoned decision, the California Court of Appeal denied the claim as follows:

### Factual Summary

On May 14, 2008, [Petitioner] asked to replace one of his two attorneys, Hyung Ki Kim. [Petitioner] had numerous complaints about Kim, including that he failed to file motions on [Petitioner's] behalf, told [Petitioner] the charged offense was a misdemeanor when [Petitioner] claimed it was an infraction, and failed to present a conceivable defense on [Petitioner's] behalf. Kim described his six visits with [Petitioner], the suppression and Pitchess [FN4] motions filed on [Petitioner's] behalf, and the legal research conducted on the offense, including that the research confirmed the offense was a misdemeanor. The trial court denied the Marsden motion, stating that Kim had done more than reasonably could be expected of an attorney handling the case.

FN 4. *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305.

Five days later, on May 19, [Petitioner] was before a different judge and again sought a Marsden hearing to replace Kim. The judge was aware that a Marsden motion had been denied five days earlier and inquired what had changed in the interim. [Petitioner] stated that it was "suspicious" that Kim did not "step down" when [Petitioner] indicated he wanted a different attorney and claimed there was a breakdown in communication. Kim indicated that [Petitioner] was being uncooperative in that he would refuse to speak to Kim when Kim did not talk about what [Petitioner] wanted to discuss, and

[Petitioner] was refusing to change from jail clothing for trial.  The judge expressly found that [Petitioner] was choosing not to speak to Kim and denied the motion.

On May 27, 2008, [Petitioner] was present in court and told the trial court he wanted to file some motions himself, apparently instead of through his attorney.  When [Petitioner's] attorney, Alan De Ocampo, Kim's co-counsel, told [Petitioner] to be careful about statements made in open court because they could be used against him, [Petitioner] stated he wanted to "fire" De Ocampo. [Petitioner] insisted that counsel had not filed motions that [Petitioner] had requested be filed.  The trial court found these matters already had been addressed at the previous Marsden hearings.

Later in the day on May 27, the trial court suspended criminal proceedings and ordered a competency determination.

On October 9, 2008, more than 30 days after criminal proceedings had been reinstated, [Petitioner] again asked to replace De Ocampo. [Petitioner] claimed he and De Ocampo had a conflict of interest because De Ocampo had told him, [Petitioner], that he did not have any rights.  De Ocampo responded that [Petitioner] was insisting on relitigating the suppression issues instead of addressing trial matters.  In denying [Petitioner's] request, the trial court found that counsel had been aggressively representing [Petitioner].

### Analysis

A defendant is entitled to relief requested in a *Marsden* motion if the record clearly shows that counsel is not providing adequate representation or that counsel and the defendant have an irreconcilable conflict, such that ineffective representation is likely to result.  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085, 74 Cal.Rptr.2d 121, 954 P.2d 384 (*Barnett*).)  A defendant, however, does not have the right to a defense of his own choosing, only the right to an adequate and competent defense.  (*Welch*, *supra*, 20 Cal.4th at p. 728, 85 Cal.Rptr.2d 203, 976 P.2d 754.)  Consequently, tactical disagreements between counsel and the defendant do not amount to an irreconcilable conflict.  (*People v. Carpenter* (1997) 15 Cal.4th 312, 376, 63 Cal.Rptr.2d 1, 935 P.2d 708 (*Carpenter*).)

When the trial court has conducted an adequate *Marsden* hearing, its determination of the request for new counsel is a matter of judicial discretion.  "Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would 'substantially impair' the defendant's right to assistance of counsel. [Citations.]" (*People v. Webster* (1991) 54 Cal.3d 411, 435, 285 Cal.Rptr. 31, 814 P.2d 1273; *People v. Horton* (1995) 11 Cal.4th 1068, 1102, 47 Cal.Rptr.2d 516, 906 P.2d 478.)

As to the May 14, 2008, request for change of counsel, [Petitioner] admits in this appeal that he did not make an adequate showing in the trial court of a breakdown in communication sufficient to warrant a change of counsel.  Therefore, [Petitioner] cannot show an abuse of discretion on the part of the trial court in denying this motion.

Additionally, [Petitioner's] list of concerns with Kim's handling of his case amount to no more than disagreements over tactical decisions and to [Petitioner] wanting to control how the defense was presented. [Petitioner], however, had neither the right to control the defense presented nor the right to dictate tactical decision.  (*Welch*, *supra*, 20 Cal.4th at p. 728, 85 Cal.Rptr.2d 203, 976 P.2d 754; *Carpenter*, *supra*, 15 Cal.4th at p. 376, 63 Cal.Rptr.2d 1, 935 P.2d 708.)  As the judge at the hearing specifically noted, Kim was doing more than would be expected of an attorney handling [Petitioner's] case.

17

[Petitioner] failed to establish that he was not receiving adequate representation. (*Barnett*, *supra*, 17 Cal.4th at p. 1085, 74 Cal.Rptr.2d 121, 954 P.2d 384.)

At the May 19, 2008, hearing, [Petitioner] essentially restated his earlier objections to Kim's representation.  Kim did note certain instances where [Petitioner] had refused to speak to or cooperate with him.  Absent a complete breakdown in the attorney-client relationship, which was not shown here, failure to cooperate and tactical differences do not require the substitution of counsel under Marsden (*People v. Shoals* (1992) 8 Cal.App.4th 475, 496-497, 10 Cal.Rptr.2d 296) or, in our view, under a conflict-of-interest rationale.  "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law."  (*People v. Crandell* (1988) 46 Cal.3d 833, 860, 251 Cal.Rptr. 227, 760 P.2d 423 (*Crandell*).)

On May 27, 2008, [Petitioner] requested that he be allowed to fire De Ocampo because De Ocampo was not filing the motions that [Petitioner] requested be filed in the case.  The trial court did not conduct a full *Marsden* hearing.  The trial court's failure to conduct a *Marsden* hearing is reviewed for an abuse of discretion.  (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070, 25 Cal.Rptr.2d 867, 864 P.2d 40, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1, 72 Cal.Rptr.2d 656, 952 P.2d 673.)

[Petitioner] was given an opportunity to state his reasons for seeking to fire counsel. [Petitioner's] stated reasons amounted to disagreement over tactics and what motions should be filed.  Tactical disagreements and disagreements over how defenses should be presented are not matters within [Petitioner's] control; tactical decisions are within counsel's control.  (*Welch*, *supra*, 20 Cal.4th at p. 728, 85 Cal.Rptr.2d 203, 976 P.2d 754; *Carpenter*, *supra*, 15 Cal.4th at p. 376, 63 Cal.Rptr.2d 1, 935 P.2d 708.)

Moreover, "A trial court is not required to conclude that an irreconcilable conflict exists if the defendant has not made a sustained good faith effort to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness."  (*Crandell*, *supra*, 46 Cal.3d at p. 860, 251 Cal.Rptr. 227, 760 P.2d 423.) [Petitioner] had made three *Marsden* requests within a single month and it was apparent that he selectively was choosing not to speak with or cooperate with counsel because he, [Petitioner], wanted to control trial tactics.

At the October 9, 2008, hearing, [Petitioner] stated he wanted to replace his counsel because counsel had told him he did not have any rights.  Counsel explained that [Petitioner] was insisting on relitigating the suppression motion and the propriety of the initial detention, instead of focusing on the trial for possession of rock cocaine.  The trial court credited counsel's remarks, telling [Petitioner] that the issue of the detention and suppression already had been addressed and denied the *Marsden* request.  The trial court makes credibility determinations and properly can credit counsel's remarks, thus finding no ineffective representation.  (*People v. Jones* (2003) 29 Cal.4th 1229, 1245, 131 Cal.Rptr.2d 468, 64 P.3d 762.)

An assertion of ineffective assistance of trial counsel will not overcome a defendant's "refusal to cooperate with his attorney."  (*People v. Booker* (1977) 69 Cal.App.3d 654, 668, 138 Cal.Rptr. 347.)  The trial court noted that [Petitioner] was being represented effectively and aggressively by counsel in the case.  A trial court does not abuse its discretion by denying a request for substitution of attorneys where the only substantial conflict between the defendant and counsel is the defendant's refusal to

cooperate in the preparation of a defense or a disagreement over trial tactics. (*Welch*, *supra*, 20 Cal.4th at p.728, 85 Cal.Rptr.2d 203, 976 P.2d 754; *Carpenter*, *supra*, 15 Cal.4th at p. 376, 63 Cal.Rptr.2d 1, 935 P.2d 708.) Likewise, where the record supports the conclusion that whatever breakdown occurred between the defendant and counsel was caused by the defendant's intransigence, the motion for substitution is properly denied. (*Crandell*, *supra*, 46 Cal.3d at p. 860, 251 Cal.Rptr. 227, 760 P.2d 423.)

We conclude the trial court did not abuse its discretion in denying the *Marsden* request.

(Ex. A, to Answer at 10-15.)

First, the Court finds that Petitioner's claim fails to present a cognizable ground for relief on federal habeas review. In essence, Petitioner challenges the trial court's application of People v. Marsden, 2 Cal.3d 118 (1970), in addressing his several motions to relieve counsel. The interpretation and application of state laws are generally not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution"). In addition, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). The Ninth Circuit has stated that the denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel, Bland v. California Dept. of Corr., 20 F.3d 1469, 1475 (9th Cir. 1994), and the Sixth Amendment requires an inquiry into the grounds for a motion to remove defense counsel, Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); however, there is no direct precedent from the Supreme Court holding that a denial of a motion to relieve defense counsel can be unconstitutional. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 129 S.Ct. 1411, 1413–14. Therefore, Petitioner's allegation that the trial court erred in denying his motion to remove counsel does not present a cognizable claim on

habeas review.

In any event, the Supreme Court has granted state courts with a great deal of leeway on the issue of attorney substitution. For instance, the Supreme Court has recognized that a defendant is entitled to counsel who "function[s] in the active role of an advocate." Entsminger v. Iowa, 386 U.S. 748, 751 (1967); see also United States v. Cronic, 466 U.S. 648, 656 (1984); Anders v. California, 386 U.S. 738, 743 (1967). However, the Court pointed out that the Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Absent a showing that "counsel actively represented conflicting interests," the defendant "has not established the constitutional predicate for his claim of ineffective assistance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).

To the extent Petitioner claims he was denied the effective assistance of counsel by the trial court's decision, it is clear from the record that the state court ruling was not contrary to or an unreasonable application of Supreme Court precedent.

As previously discussed, the law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S. at 694.  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. 668, 697 (1984).  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

In this case, the trial court considered Petitioner's multiple claims of ineffective assistance and determined that defense counsel had not performed deficiently.  Petitioner complained that defense counsel failed to make certain motions.  Counsel detailed the six visits he had with Petitioner and the various motions filed and research conducted on Petitioner's behalf.  Petitioner also complained that there was a breakdown in communication between himself and counsel.  Counsel responded that Petitioner was not being cooperative and would refuse to speak with him, and Petitioner was refusing to change from jail clothing for trial.  Much of Petitioner's complaints stemmed from Petitioner's disagreement over the tactical decisions of defense counsel and the approach counsel intended to take in presenting a defense.  This is not incompetence.

Petitioner also argued that counsel De Ocampo advised him that he did not have any rights.  De Ocampo responded that Petitioner was insisting on relitigating the suppression issues instead of focusing on the trial issues.

Ultimately the trial court provided Petitioner with several opportunities to voice his concerns.  The concerns were addressed and the trial court determined that Petitioner had failed to present sufficient evidence to warrant relieving counsel.  The Constitution does not "guarantee a meaningful relationship between a defendant and his counsel."  Morris v. Slappy, 461 U.S. 1, 13-14 (1983).  There was no evidence of a complete collapse in the relationship.  There was also no evidence of a conflict of interest.  Petitioner fails to show counsel was ineffective, or that the alleged ineffectiveness prejudiced him in any way.  In light of the record, Petitioner fails to demonstrate that the appellate court's rejection of his claim of ineffective assistance of counsel was contrary to or an unreasonable application of the Strickland standard.  The claim should be rejected.

VII.  Denial of Faretta Motion to Represent Himself

In Ground Five, Petitioner contends the trial court should have granted his Faretta motion to represent himself because his request was unequivocal, timely and not for the purposes of delay.

The California Court of Appeal denied the claim in the last reasoned decision as follows:

Although [Petitioner] claims the trial court erred in finding him competent to stand trial, he also contends the trial court abused its discretion in denying his motion to represent himself at trial.  We conclude the trial court did not abuse its discretion in denying [Petitioner's] request for self-representation.

Factual summary

On May 19, 2008, [Petitioner] indicated he might want to represent himself, but that it was not "definite as a decision."  The trial court provided [Petitioner] with a *Faretta* questionnaire to complete and warned [Petitioner] of the perils of self-representation. Later that afternoon, [Petitioner] indicated he had decided to continue being represented by counsel.

On October 9, 2008, during jury selection, [Petitioner] stated he wished to represent himself at trial, but needed a "short time" to study the law.  The trial court asked [Petitioner] to specify if he was asking for a week, two weeks, or a few days. [Petitioner] did not provide any estimate, but remarked it would depend on how long it took the county jail to provide him access to the law library.

The trial court noted that it was the second day of jury selection and that if [Petitioner's] request for self-representation were granted, a continuance of an unknown period of time would have to be granted for [Petitioner] to research the law and the jury would have to be dismissed.  The trial court stated that the request was untimely and denied it.

*Analysis*

A criminal defendant has a right to represent himself at trial.  (*Marshall*, *supra*, 15 Cal.4th at p. 20, 61 Cal.Rptr.2d 84, 931 P.2d 262.)  In order to invoke the right to self-representation, a defendant must be competent; the request must be knowingly and intelligently made; the request must be unequivocal; and the request must be made within a reasonable time before trial.  (*Id.* at pp. 20-21, 61 Cal.Rptr.2d 84, 931 P.2d 262.)  There is no particular time period at which a motion for self-representation must be made in order to be considered timely, other than it must be made  a reasonable time before trial.  (*People v. Clark* (1992) 3 Cal.4th 41, 99, 10 Cal.Rptr.2d 554, 833 P.2d 561.)

A trial court has broad discretion in determining whether to grant or deny an untimely request for self-representation.  (*People v. Hardy*; (1992) 2 Cal.4th 86, 196-197, 5 Cal.Rptr.2d 796, 825 P.2d 781.)  A trial court acts within its discretion in concluding that a motion for self-representation on the eve of trial will be granted only if a defendant is ready to proceed without delay.  (*People v. Valdez* (2004) 32 Cal.4th 73, 103, 8 Cal.Rptr.3d 271, 82 P.3d 296 (*Valdez*).)  Here, the trial court was well within its discretion to deny [Petitioner's] motion for self-representation.

In *Valdez*, the defendant made a motion for self-representation moments before jury selection was to begin.  (*Valdez*, *supra*, 32 Cal.4th at p. 101, 8 Cal.Rptr.3d 271, 82 P.3d

22

296.)  The California Supreme Court concluded the defendant's motion was untimely and the trial court acted within its discretion in concluding the defendant could represent himself only if the case could proceed without any delay.  (*Id*. at p. 103, 8 Cal.Rptr.3d 271, 82 P.3d 296.)

That [Petitioner] did not use the word "continuance" or provide a specific time estimate of when he would be ready to proceed did not mean there would be no delay if the motion were granted.  Even though [Petitioner] failed to state specifically a time estimate or a date by which he would be ready to proceed, he did state that he needed a "short time" to study the law.

Clearly, [Petitioner] was not ready to proceed at the time he made the request for self-representation.  Jury selection already had commenced, and giving [Petitioner] a "short time" to study the law meant a delay or continuance.  Thus, the trial court did not abuse its discretion in denying [Petitioner's] request for self-representation.  (*Valdez, supra*, 32 Cal.4th at p. 103, 8 Cal.Rptr.3d 271, 82 P.3d 296.)

(Ex. A, to Answer at 15-16.)

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." Faretta v. California, 422 U.S. 806, 807 (1975).  The Sixth Amendment also implies a right of self-representation. Id. at 821.  In order to invoke such a right, the defendant must make a request that is knowing, voluntary, intelligent, unequivocal, timely, and not for purposes of delay.  Stenson v. Lambert, 504 F.3d 873, 882 (9th Cir. 2007); see also United States v. Mendez-Sanchez, 563 F.3d 935, 945-946 (9th Cir. 2009). Faretta held only that a motion filed "weeks before trial" is sufficiently timely, and there is no other definitive time frame as to when a Faretta motion would be untimely.  The state courts must determine whether a particular motion is timely, and the Ninth Circuit has upheld the denial of a Faretta motion on the day of trial as untimely.  Marshall v. Taylor, 395 F.3d 1058, 1061-1062 (9th Cir. 2005).

In this case, Petitioner raised the Faretta motion after commencement of the trial as the case was in its second day of voir dire.  Voir dire began on the morning of October 8, 2008, and continued until 4:00 that afternoon.  Petitioner made his Faretta motion the next day and requested a "short time" to study the law.  When the trial court asked for a specific time estimate, Petitioner was unable to give one and merely stated it would depend on how long it took the jail to provide him access to the law library.  In Stenson, the Ninth Circuit also found the trial court's

decision to deny the motion for self-representation made during voir dire and "on the verge of jury impanelment" was untimely and was not objectively unreasonable.  Stenson v. Lambert, 504 F.3d at 882, 884; see also Marshall v. Taylor, 395 F.3d at 1061-1062.  The trial court's finding that Petitioner's motion was untimely and would cause an undue delay was not objectively unreasonable and Petitioner's claim to the contrary is without merit.

VII. Denial of Motion for Mistrial

In Ground Six, Petitioner contends the trial court erred by denying his motion for mistrial based on a witness's violation of an in limine ruling.

Respondent initially argues that this claim is unexhausted and, in the alternative, it is without merit because the violation did not have a substantial and injurious effect or influence on the verdict.

In the last reasoned decision, the California Court of Appeal denied the claim stating:

[Petitioner] contends the trial court erred prejudicially when it denied his motion for a mistrial after a prosecution witness in direct testimony referred to a matter that the trial court had precluded from being introduced into evidence. [Petitioner] maintains the prosecutor committed misconduct by deliberately eliciting the information, thus depriving [Petitioner] of a fair trial and a mistrial should have been granted.  We disagree.

*Factual Summary*

Prior to the start of trial, the trial court ruled that, with respect to the prior incidents where [Petitioner] was in possession of a crack pipe, the evidence that one pipe had cocaine residue in it was more prejudicial than probative.  The trial court precluded the People from introducing evidence regarding the residue.

When the officer was testifying regarding the crack pipe found in [Petitioner's] possession, the prosecutor asked the officer for the basis of his opinion that the crack pipe had been used.  The officer responded, "The burn markings on the pipe along with the white residue."  Defense counsel immediately called out "Objection," but failed to state a basis for the objection.  When the trial court indicated it was seeking the basis of the objection, defense counsel responded, "Objection, relevance."  The trial court overruled the objection.

Immediately after the objection was overruled, defense counsel requested a sidebar, which the trial court denied.  Defense counsel stated again that if the trial court was overruling the objection, a sidebar was requested.  The trial court again denied the request for a sidebar and directed the parties to proceed.

After the jury had been instructed and had commenced deliberations, defense counsel complained that the trial court's in limine ruling had been violated and the trial court had denied the request for a sidebar.  The trial court acknowledged it had erred in denying the request for a sidebar.  Defense counsel moved for mistrial, which the trial

court denied on the grounds the circumstances did not "cut close to that standard to declare a mistrial."

*Analysis*

The People contend that [Petitioner] failed to preserve the claim of prosecutorial misconduct because the stated basis for the objection was relevance. The issue on appeal, however, is not specifically whether the prosecutor committed misconduct, but whether a mistrial should have been granted based on the admission of evidence that was excluded under the in limine ruling.

A trial court should grant a mistrial "only when '"a party's chances of receiving a fair trial have been irreparably damaged,"'" and we use the deferential abuse of discretion standard to review a trial court ruling denying a mistrial. (*People v. Ayala* (2000) 23 Cal.4th 225, 282, 96 Cal.Rptr.2d 682, 1 P.3d 3 (*Ayala*).)

The trial court's ruling on the in limine motion was that "the testimony [would] be as to the paraphernalia ... without reference to residue or anything else." This ruling came after a discussion among the trial court, prosecutor, and defense counsel that the evidence would be limited to paraphernalia, with evidence of prior cocaine possession excluded as unduly prejudicial.

Both parties concede that testimony regarding the residue on the crack pipe violated the trial court's in limine ruling. The question is whether this reference deprived [Petitioner] of a fair trial. Even if we were to conclude there was inadvertent prosecutorial misconduct, the denial of the mistrial motion still would not be incorrect. (*People v. Bolton* (1979) 23 Cal.3d 208, 231-214, 152 Cal.Rptr. 141, 589 P.2d 396 (*Bolton*).) First, because the one comment regarding residue was not so prejudicial that it deprived [Petitioner] of a fair trial. Second, the evidence of guilt was convincing and substantial.

Whether a particular incident is prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. (*People v. Wharton* (1991) 53 Cal.3d 522, 565, 280 Cal.Rptr. 631, 809 P.2d 290.) Here, the reference to the residue on the crack pipe was made once by the officer and constituted a passing reference contained in response to one question. The reference was one comment out of two days of testimony by various witnesses. The prosecutor did not reference the residue comment in closing argument. The jury was instructed that the uncharged acts evidence was admitted for the "limited purpose of deciding whether or not: The defendant is familiar with and knows that cocaine base is a controlled substance." The trial court reasonably could have concluded that the one comment regarding the residue was not so prejudicial that [Petitioner's] ability to receive a fair trial had been so damaged that it warranted granting a mistrial. (*Welch, supra*, 20 Cal.4th at p. 749, 85 Cal.Rptr.2d 203, 976 P.2d 754.)

"[T]he test of prejudice is whether it is 'reasonably probable' a result more favorable to the defendant would have occurred." (*Bolton, supra*, 23 Cal.3d at p. 214, 152 Cal.Rptr. 141, 589 P.2d 396.) Improper evidence of a past crime does not cause reversal where the record evidence otherwise points convincingly to guilt. (*People v. Cabrellis* (1967) 251 Cal.App.2d 681, 688, 59 Cal.Rptr. 795; *People v. Stinson* (1963) 214 Cal.App.2d 476, 482, 29 Cal.Rptr. 695.) Schell-Route testified that she found cocaine in [Petitioner's] jacket pocket when she conducted a search incident to arrest. On two prior occasions, [Petitioner] was found to be in possession of a crack pipe. The pipe had burn markings on it, which indicated it had been used. [Petitioner] admitted that the cocaine was found in his jacket pocket and maintained he had no knowledge of

1    its presence, even though he had been wearing the jacket for a few days.

2        We are satisfied that it is not reasonably probable the result of the trial would have
3    been more favorable to [Petitioner] absent the one reference to residue.  Necessarily,
     then, [Petitioner] was not prejudiced by the trial court's denial of the mistrial motion.
4    (*Welch, supra*, 20 Cal.3th at pp. 749-750, 85 Cal.Rptr.2d 203, 976 P.2d 754.)  It
     follows, therefore, that the trial court did not abuse its discretion in denying the mistrial
5    motion.  (*Ayala, supra*, 23 Cal.4th at p. 282, 96 Cal.Rptr.2d 682, 1 P.3d 3.)

6    (Ex. A, to Answer at 17-20.)

7        In order to succeed in his claim, Petitioner must demonstrate that the officer's statement

8    was prejudicial, that is, that it had a substantial and injurious effect or influence in determining

9    the jury's verdict.  <u>Johnson v. Sublett</u>, 63 F.3d 926, 929 (9th Cir. 1995) (citing <u>Brecht v.</u>

10   <u>Abrahamson</u>, 507 U.S. 619, 623 (1993).  Petitioner has failed to meet his burden.  There is no

11   showing that the one isolated comment regarding the residue on the crack pipe had a substantial

12   and injurious effect or influence on the jury's verdict.  The record demonstrates that Officer

13   Schell-Route discovered cocaine base in Petitioner's jacket pocket.  Petitioner was arrested and a

14   search of his person revealed an off-white substance in his left jacket pocket, which the officer

15   opined was approximately $5.00 worth of rock cocaine.  A community service officer determined

16   that the substance obtained from Petitioner was presumptively positive for cocaine base with an

17   approximate weight of .1 grams, a usable amount.  A criminalist later confirmed the substance

18   contained cocaine base.  Petitioner acknowledged that cocaine was found in his jacket pocket but

19   claimed to have no knowledge of its presence, despite admitting he had worn the jacket for a few

20   days.  Although Officer Kazarian should not have referenced the residue found on the pipe, the

21   testimony was minimal in nature and there is no showing that it had any prejudicial effect on the

22   jury's determination.  Under these circumstances, the state courts' determination of this issue was

23   not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

     VIII.    <u>Denial of Request to Dismiss Jury Panel</u>
24
         In Ground Seven, Petitioner contends the trial court should have granted his request to
25
     dismiss the jury panel "because two prospective panelists tainted the entire panel by their
26
     negative observations about persons who frequent the area where . . . [Petitioner] was arrested."
27
         Respondent submits that this claim is unexhausted because Petitioner did not present it to the
28

California Supreme Court for review, and the Court agrees.  (See LD 13.)  In any event, the claim is without merit.

The California Court of Appeal denied the claim on the merits stating:

[Petitioner] contends the trial court erred in denying his motion to dismiss the entire venire panel after two prospective jurors made comments about the location where [Petitioner] was arrested that were potentially inflammatory.  We disagree with [Petitioner's] contention.

### Factual Summary

During voir dire, one prospective juror commented in response to a question about the area where [Petitioner] was arrested that "you're not at G and California for a good reason. . . . [Y]ou're in the tent city, or you're up to no good in that tent city, and that's my thing."  The prospective juror admitted that her knowledge and perception of the area would affect her ability to be impartial; she was removed for cause.

Subsequently, another prospective juror commented, "anybody that's down here is either stranded or" -The trial court immediately stopped the juror and admonished, "there's been no evidence.  And what jurors say in voir dire and what I say is not evidence."  Upon being asked, the prospective juror remarked that he would be unable to separate his life experiences with the area from the deliberative process.

Out of the presence of the venire panel, [Petitioner] moved to dismiss the entire jury panel because it had heard prejudicial information about the area around G and California Streets. [Petitioner] noted that an in limine ruling precluded officers from referring to the area as a high crime area.  The trial court responded that it had admonished the prospective jurors that information provided or comments made by prospective jurors were not evidence and were not to be considered.

The trial court took the motion under submission.  The following day, the trial court denied the motion to dismiss the entire venire panel.

### Analysis

A trial court's refusal to dismiss the entire jury panel based upon comments from a prospective juror is reviewed for abuse of discretion under the totality of the circumstances. (*People v. Nguyen* (1994) 23 Cal.App.4th 32, 41-42, 28 Cal.Rptr.2d 140 (*Nguyen*).)  The trial court "possesses broad discretion to determine whether or not possible bias or prejudice against the defendant has contaminated the entire venire to such an extreme that its discharge is required." (*People v. Medina* (1990) 51 Cal.3d 870, 889, 274 Cal.Rptr. 849, 799 P.2d 1282.)  As the California Supreme Court stated:

"We believe the trial court possesses broad discretion to determine whether or not possible bias or prejudice against the defendant has contaminated the entire venire to such an extreme that discharge is required.  Defendant cites no case, and we have found none, indicating that such a drastic remedy is appropriate as a matter of course merely because a few prospective jurors have made inflammatory remarks.  Unquestionably, further investigation and more probing voir dire examination may be called for in such situations, but discharging the entire venire is a remedy that should be reserved for the most serious occasions of demonstrated bias or

prejudice, where interrogation and removal of the offending
venirepersons would be insufficient protection for the defendant."
(*Ibid.*)

In determining whether the panel as a whole could not be fair and impartial, we
consider the totality of the circumstances surrounding jury selection, keeping in mind
that the conclusion of the trial court with respect to claims both of individual juror bias
and group bias is entitled to great deference. (*People v. Martinez* (1991) 228
Cal.App.3d 1456, 1465, 1466-1467, 279 Cal.Rptr. 858 (*Martinez*).)

We conclude the trial court here did not err in declining to discharge the entire panel.
True, two prospective jurors had made comments about the area in which [Petitioner]
was arrested and persons found in that area in the presence of the venire panel.
[Petitioner] fails to persuade us that these individuals, and any venireperson, affected by
the remarks could not be, and were not, weeded out through the normal course of jury
selection. The record affirmatively shows that the prospective jurors making these
remarks were dismissed for cause and the venire panel admonished not to consider their
remarks.

The case of *People v. Ayala* (2000) 24 Cal.4th 243, 99 Cal.Rptr.2d 532, 6 P.3d 193 is
instructive. In that case, the defendant's brother was tried for, and sentenced to death
on, crimes arising from the same events for which the defendant was on trial. Because
of the news coverage of the brother's case, the defendant moved to dismiss the jury
panel or, alternatively, to continue the trial. The motions were denied. (*Id*. at p. 270, 99
Cal.Rptr.2d 532, 6 P.3d 193.) In finding no error, the California Supreme Court stated:
"[W]e observe that there was no need to discharge the jury panel unless, after the jury
was selected, jurors were sworn who, because of their knowledge of the trial or
sentence, or both, of [the brother], could not be fair in defendant's case. [Citation.]" (*Id*.
at p. 271, 99 Cal.Rptr.2d 532, 6 P.3d 193.)

[Petitioner's] contention that the venire panel was biased by the remarks made by the
two prospective jurors is pure speculation. [Petitioner] presents no evidence that
prospective jurors ignored the trial court's admonishment to disregard the remarks made
by the two prospective jurors. Absent evidence to the contrary, we presume jurors
followed the instruction. (*People v. Adcox* (1988) 47 Cal.3d 207, 253, 253 Cal.Rptr. 55,
763 P.2d 906.)

Implicit in the trial court's denial of the motion to dismiss the entire venire panel is
the finding that the entire venire panel was not prejudiced or biased by the remarks, and
the trial court's determination in this regard is entitled to great deference. (*Martinez*,
*supra*, 228 Cal.App.3d at pp. 1465, 1466-1467, 279 Cal.Rptr. 858.)

We conclude the trial court did not abuse its discretion in denying the motion to
dismiss the entire venire panel. (*Nguyen*, *supra*, 23 Cal.App.4th at pp. 41-42, 28
Cal.Rptr.2d 140.)

(Ex. A, to Answer at 20-22.)

"In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial

. . . by an impartial jury," U.S. Const. amends. VI and XIV; see Duncan v. Louisiana, 391 U.S.

145 (1968). The right to a trial by an impartial jury lies at the very heart of due process. Irvin v.

Dowd, 366 U.S. 717, 721-722 (1961). In reviewing a claim of juror misconduct, "[t]he test is

whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.), *cert. denied*, 419 U.S. 835 (1974). But "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Smith v. Phillips, 455 U.S. 209, 217 (1982). As the Supreme Court explained in Smith:

> Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

Id.

"Impartiality is not a technical conception," but instead is "a state of mind," and that, "[f]or the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." See United States v. Wood, 299 U.S. 123, 145-146 (1936). Thus, "in each case a broad discretion and duty reside in the [trial] court to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality . . . ." Frazier v. United States, 335 U.S. 497, 511 (1948). Jurors are presumed to be impartial. Irvin, 366 U.S. at 723. Jurors are also presumed to follow the trial court's instructions. Penry v. Johnson, 532 U.S. 782, 789 (2001).

Here, the California Court of Appeal's decision is not an unreasonable application of Supreme Court precedent. The remarks by the two prospective jurors were minimal and not overly prejudicial, and those two jurors were excused for cause. In addition, they did not provide expert testimony, and their responses were merely personal opinions of their views of the community. The panel of potential jurors were specifically admonished that any statements by jurors made during voir dire were not evidence, and the evidence came only from the witness stand. (ART 106, 126.) Jurors are presumed to follow the instructions by the trial court and Petitioner has failed to produce any evidence that the jurors did not do so in this case. See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (noting that "almost invariable assumption of the law that jurors follow their instructions"). Based on these circumstances, the state courts'

determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  28 U.S.C. § 2254(d).

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

  **Dated:   January 4, 2012**                      **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE